**TRUNKLINE GAS COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

Michigan Consolidated Gas Company, Consumers Power Company, Mississippi River Transmission Corporation, Columbia Gas Transmission Corporation, Indiana Gas Company, Inc., Panhandle Eastern Pipe Line Company, General Service Customer Group, Michigan Gas Utilities Company, Intervenors.

No. 88–1437.

United States Court of Appeals, District of Columbia Circuit.

Argued May 15, 1989.

Decided July 25, 1989.

Raymond N. Shibley, with whom Lawrence G. Acker, Washington, D.C., was on the brief, for petitioner and also entered appearances for intervenor Panhandle Eastern Pipe Line Co. Bruce W. Neely, Washington, D.C., also entered an appearance for petitioner and for intervenor Panhandle Eastern Pipe Line Co.

Jill Hall, Atty., Federal Energy Regulatory Com'n with whom Catherine C. Cook, General Counsel, and Jerome M. Feit, Sol., Federal Energy Regulatory Com'n, Washington, D.C., were on the brief, for respon-

dent. Dwight Alpern also entered an appearance for respondent.

William M. Lange, Daniel W. McGill, Indianapolis, Ind., Tom Rattray, Frederic J. George and John R. Schaefgen, Jr., Washington, D.C., were on the joint brief for intervenors.

Jeffrey M. Petrash and James H. Holt, Washington, D.C., entered appearances for intervenor Michigan Consol. Gas Co.

David T. Andril and Platt W. Davis, III, Washington, D.C., entered appearances for intervenor Mississippi River Transmission Corp.

Ronald E. Christian entered an appearance for intervenor Indiana Gas Co., Inc.

Richard M. Merriman, Washington, D.C., entered an appearance for intervenors General Service Customer Group and Michigan Gas Utilities Co.

Before MIKVA and WILLIAMS, Circuit Judges, and WILL,* Senior District Judge.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Trunkline Gas Company contests FERC's deletion of its minimum bill. In support of its action, the Commission cites several recent decisions of this court approving its efforts to eliminate most minimum bills as being anticompetitive and unjust. See, for example, *East Tennessee Natural Gas Company v. FERC*, 863 F.2d 932 (D.C.Cir. 1988); *Tennessee Gas Pipeline Company v. FERC*, 871 F.2d 1099 (D.C.Cir.1989). Trunkline asserts, however, that certain elements of this case distinguish it from our precedents. First, it argues that its price disadvantage compared to the spot market, together with its customers' decisions to purchase gas primarily from others, demonstrate that its minimum bill is in fact not anticompetitive. Second, it contends that the combination of FERC's elimination of its minimum bill and its prior rulings—

shifting from Trunkline's demand charge to its commodity charge both its take-or-pay expenses and its minimum bill payments to Trunkline LNG Company (Trunkline Gas's supplier of liquified natural gas) —effectively denies it the assurance it deserves of recovering these fixed costs. Finally, Trunkline asserts that deletion of its minimum bill will deny its investors reasonable assurance of the company's creditworthiness.

■ Before addressing these matters, we dispose of a contention that the Commission itself believes requires a remand. FERC made its decision retroactive to May 1, 1987. The company argues that this aspect of the order violates the proper relationship between § 4 and § 5 of the Natural Gas Act, 15 U.S.C. §§ 717c, 717d (1982). Our intervening decision in *East Tennessee*, 863 F.2d at 941–45, makes clear that such a retroactive elimination could conform to §§ 4 and 5 only under narrow circumstances. The Commission asks for a remand for it to consider the possibility that such circumstances exist here. Without suggesting that they do, we remand for the Commission to explore the issue.

## BACKGROUND

The current bout between Trunkline and FERC began with Trunkline's filing on October 31, 1986 of an application under § 4 to increase its rates. Trunkline's proposed tariff included provisions for a minimum bill:

*Minimum Annual Bill:* The minimum annual bill shall consist of the sum of the following amounts:

The sum of the monthly demand charges for the year.

A minimum volume charge for the year equal to the product of 75% of the Maximum Daily Contract Quantity and 365 (366 in leap year), multiplied by the Commodity Charge per Dt, less Gas Cost and Variable Cost Components, as set forth on Sheet No. 3–A.

pursuant to 28 U.S.C. § 294(d).

---

* Of the United States District Court for the Northern District of Illinois, sitting by designation

*Trunkline Gas Co.*, 40 FERC ¶ 63,033, at 65,145 (1987). Thus it included neither the purchased gas costs that the Commission had deleted from minimum bills effective on adoption of Order No. 380,[1] nor its other variable costs, which the Commission had ordered be excluded from any rates filed after July 31, 1984. 18 CFR § 154.111(a)(2); see also [1982–85 Reg. Preambles] FERC Stat. & Reg. ¶ 30,584, at 30,969.

The Commission accepted the filing but imposed two conditions relevant here. *Trunkline Gas Company*, 37 FERC ¶ 61,201 (1986). First, it required Trunkline to move both its take-or-pay costs and its minimum bill payments to Trunkline LNG from its demand to its commodity charge. *Id.* at 61,484. Second, it ordered a hearing before an administrative law judge on a variety of related issues, including the continued existence of Trunkline's minimum bill. *Id.*

The ALJ divided the proceeding into three parts. In Phase I, relating to the minimum bill, he ordered its elimination, finding it anticompetitive, unjust and unreasonable. *Trunkline Gas Company*, 40 FERC ¶ 63,033 (1987). While recognizing Trunkline's concerns over the take-or-pay and Trunkline LNG payments, he dispatched them abruptly, observing: "These costs should be placed in either the demand component, as Trunkline suggests, or the commodity component, as Staff suggests. They should not, however, be included in a minimum bill." *Id.* at 65,149.

FERC upheld the ALJ's conclusion, adding nothing of substance to his view of the Trunkline LNG minimum bill expenses and Trunkline's take-or-pay costs. *Trunkline Gas Company*, Opinion No. 297, 42 FERC ¶ 61,201 (1988). In addition, it made the deletion retroactive.

### EFFECT OF COMPETITORS' UNDERPRICING ON FERC'S THEORY THAT THE MINIMUM BILL IS ANTICOMPETITIVE

 The Commission had calculated that Trunkline's proposed minimum bill would give it an artificial advantage of 41.7 cents per dekatherm (a unit almost equivalent to a thousand cubic feet or "Mcf" of gas). Since a customer buying less than 75% of its Minimum Daily Contract Quantity would pay that amount whether it bought the next unit of gas or not, the incremental price of an additional dekatherm would be Trunkline's commodity rate *minus* 41.7 cents. *Trunkline*, 42 FERC ¶ 61,201 at 61,694. Trunkline responds that at the time evidence was presented in the present case, its commodity rate was $2.58 per Mcf, as against a spot market price of about $1.40–$1.60. From this Trunkline reasons that elimination of its minimum bill was by no means necessary to protect competition. Moreover, not surprisingly, its customers with access to alternative sources have in the relevant period bought most of their gas from them rather than from Trunkline. Thus, Trunkline says, its minimum bill cannot have been anticompetitive.

Trunkline's evidence does not in itself defeat the Commission's view that its minimum bill afforded it an artificial price advantage, with the potential for injuries to competition. The Commission's argument is that it seeks a generally level playing field. "The minimum bill does act as a penalty to competition because the minimum bill precludes partial requirements customers from pursuing a least cost purchasing policy." *Trunkline*, 42 FERC ¶ 61,201 at 61,694. It is no answer for Trunkline to say that no leveling is needed because it is constantly being outscored. Even a player benefitted by a tilt in the field may suffer inadequacies that make it lose despite the tilt. That is not, in itself, a good reason not to grade the field. See *East Tennessee*, 863 F.2d at 939 (stressing anticompetitive potential in artificial price advantage).

We note that the Commission does not, in fact, believe that leveling the playing field requires elimination of *all* guaranteed cost

---

**1.** *Elimination of Variable Costs for Certain Natural Gas Pipeline Minimum Commodity Bill Provisions*, Order No. 380, [1982–85 Reg. Preambles] FERC Stat. & Reg. ¶ 30,571 (1984), Order No. 380–A, [1982–85 Reg. Preambles] FERC Stat. & Reg. ¶ 30,584, *aff'd, Wisconsin Gas Co. v. FERC*, 770 F.2d 1144 (D.C.Cir.1985); 18 CFR § 154.111 (1988).

recovery; it still allows a demand charge, which like a minimum bill must be paid regardless of a customer's actual gas takes. As discussion of the other issues shows, the Commission views the matter as one of finding a balance between the benefits of instantaneous competition and certain special justifications for recovery of fixed costs.

### EFFECT OF THE SHIFT OF TRUNKLINE'S LNG PAYMENTS TO ITS COMMODITY CHARGE

■ In *Atlantic Seaboard Corp.*, 38 FPC 91 (1967), *aff'd*, 404 F.2d 1268 (D.C. Cir.1968), the Commission identified three factors that might justify a minimum bill. The first, though loosely referred to as the need to assure recovery of fixed costs, was recharacterized by the Commission in *Transwestern Pipeline Co.*, 32 FERC ¶ 61,009 (1985), *reh'g denied*, 36 FERC ¶ 61,175 (1986), *aff'd*, 820 F.2d 733 (5th Cir.1987), as essentially the need "to balance the incentives to minimize long term costs [that] competition provides against the fact that gas pipelines have high fixed costs." 32 FERC ¶ 61,009 at 61,031. *Transwestern* appeared to take the view that (normally, at least) the Commission would consider the balance properly struck, without a minimum bill, if the pipeline's rates took the "modified fixed variable" form, known as "MFV." Under this design fixed costs are allocated to the demand charge except for those attributable to the return on the equity allocable to pipeline investments, related income taxes, and fixed gas production costs. See *id.* at 61,034–36; see also *East Tennessee*, 863 F.2d at 939. In *East Tennessee*, we found that to be a policy judgment within FERC's authority to make. *Id.* at 939–40.

Trunkline's contention is essentially that because of the Commission's shift of its Trunkline LNG payments and its take-or-pay costs to the commodity charge, its rate design is MFV in name only. The argument is that if a normal MFV rate strikes the proper balance between incentives to reduce costs and legitimate protection for fixed investments without a minimum bill, then the Commission must re-examine the matter when the rate design actually employed allocates to the commodity charge either fixed costs that have no clear analogue in conventional MFV design, or which in conventional MFV design are allocated to the demand charge. In other words, the minimum bill and the demand charge represent closely related alternate means for assuring recovery of fixed costs. The Commission, Trunkline argues, must coordinate them.

Here we address the argument solely as to Trunkline's payments to Trunkline LNG, reserving the take-or-pay costs for our discussion of the third *Seaboard* factor, which deals specifically with those costs. With respect to the Trunkline LNG minimum bill payments, we agree with Trunkline at least to the extent of concluding that the Commission's action here represents an unexplained "swerve" from its prior policy, see *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C.Cir.1970), requiring a remand for further consideration.

FERC's predecessor initially allowed the minimum bill in Trunkline LNG's rate structure in *Trunkline LNG Co. and Trunkline Gas Co.*, Opinion No. 796, 58 FPC 726 (1977). As the Commission stated at that time,

> based upon the record in this proceeding, the Commission should adopt a minimum bill for periods of service interruptions which would permit Trunkline LNG to recover its nonequity related fixed costs. This provision is necessary in order to ensure financeability of the project.

*Id.* at 739–40 (footnotes omitted). FERC reaffirmed the necessity for a Trunkline LNG minimum bill in Order No. 380–A, where it held that Order No. 380's removal of variable costs from minimum bills should not apply to Trunkline LNG's minimum bill. Order No. 380–A, [1982–85 Reg. Preambles] FERC Stat. & Reg. ¶ 30,584 at 31,062–63 (1984). Although that minimum bill included, for example, operating and maintenance expenses, the Commission explained that they should really be regarded as fixed, at least in part because the Commission had (in approving the minimum bill) contemplated that Trunkline LNG might be

obligated to pay its supplier and its shipping costs even where it was unable to deliver LNG to its customer. *Id.* at 31,062. "In [Trunkline LNG]'s case the Rule [Order No. 380] would actually remove 'fixed' costs from [its] minimum bill. Removal of *fixed* cost recovery is something the Commission did not intend in promulgating the Rule." *Id.* at 31,063 (emphasis in original).

These decisions, of course, involved *Trunkline LNG*'s minimum bill, not Trunkline's. It may be that as to Trunkline, the Commission regards its minimum bill obligations to Trunkline LNG as "fixed gas production costs," which under *Transwestern* are denied assured recovery (i.e., are put in the commodity charge of companies that are not allowed a minimum bill). But in fact the Commission appears to have taken the opposite position, explicitly treating Trunkline's minimum bill obligations to Trunkline LNG as "non-gas" costs of Trunkline and therefore including them in Trunkline's own minimum bill. See *Trunkline Gas Company*, 33 FERC ¶ 61,069 at 61,152 (October 25, 1985); see also Joint Appendix ("J.A.") 450 (Trunkline argument, on request for rehearing, that Commission's minimum bill ruling was inconsistent with prior treatment of Trunkline LNG and of Trunkline's obligation to it).

The Commission's sole explanation for the apparent inconsistency is a conclusory assertion that Trunkline's rate design is truly MFV "even though the Commission, for policy reasons, assigned certain costs to the commodity component as supply-related pending the determination of the appropriate classification of these costs in Phase II of this proceeding." 42 FERC ¶ 61,201 at 61,695 (footnotes omitted). This is no explanation at all. A reference to undisclosed "policy reasons" is not a policy analysis.

Nor is the reference to the still-pending Phase II proceeding an adequate explanation for deferring analysis. (While an ALJ on October 29, 1987 accepted Trunkline's argument that the payments belonged in the demand charge, 41 FERC ¶ 63,011 at 65,043–44, the Commission has yet to review the decision.) Demand·charges and minimum bills are, as *Transwestern* obviously recognizes, closely related devices for assuring pipelines recovery of selected costs and of reducing the incremental cost a customer pays on purchase of a unit. When the Commission shifted the LNG costs from the demand to the commodity charge (in its original order setting a hearing on the Trunkline filing) it did little to reduce the assurance, since the costs were in large part picked up by the minimum bill. With its deletion of the minimum bill, it dropped the second shoe. Trunkline deserves at least reasoned decisionmaking on the occasion of the Commission's effective elimination of the formerly approved assurances.

The Commission's failure to explain the treatment of Trunkline's minimum bill obligations to Trunkline LNG also infects its disposition of the second type of concern that *Seaboard* recognizes as justifying a minimum bill. As the Commission put it in *Transwestern*, "a minimum bill may be justified as a means of protecting full requirements customers [i.e., those who purchase all their gas from a single pipeline] from bearing a disproportionate share of the fixed costs resulting from swings off the system by partial requirements customers." 32 FERC ¶ 61,009 at 61,031. In *East Tennessee*, this court accepted the Commission's view that a pipeline with an MFV rate design did not require a minimum bill to avoid such disproportion. 863 F.2d at 940.

In dismissing the second *Seaboard* justification, the Commission invoked the principle that a minimum bill is not needed to achieve the correct proportion in the case of pipelines with an MFV rate design. 42 FERC ¶ 61,201 at 61,696. FERC referred to its earlier disposition of this question in *Transcontinental Gas Pipe Line Corp.*, Opinion No. 260–A, where it took the view that

the benefits to ratepayers of placing the pipeline at risk for the limited fixed costs included in the commodity component under MFV outweigh the potential detriment of shifting those limited fixed costs among various classes of ratepayers.

40 FERC ¶ 61,188 at 61,591. FERC also said that this rationale was "even more appropriate here because full requirements sales constitute a very small portion of Trunkline's total sales." 42 FERC ¶ 61,201 at 61,696.

The reasonableness of this analysis obviously hangs on the reasonableness of the Commission's view of the first *Seaboard* justification—the issue of balance between incentives to competition and protection of fixed costs. As to both, the Commission took the position that pipelines with an MFV rate design do not require a minimum bill. But if the Commission failed to justify its view that Trunkline's design was truly MFV, as we found on the first point, because of its unexplained allocation of the Trunkline LNG obligations to the commodity charge, then its disposition of the second *Seaboard* justification falls too.

This does not mean, however, that the Commission's decision eliminating Trunkline's minimum bill must be overturned. The root cause of the problem is the presence of the LNG costs in the commodity component of the rate; as long as they remain there, the Commission cannot rely on its assumption that Trunkline is operating on an MFV rate design. Return of the LNG costs to the demand component of the rate, as suggested by the ALJ in Phase II, would validate the Commission's assumption of an MFV rate design. We therefore refrain from reversing the Commission's order deleting Trunkline's minimum bill, but condition this outcome on its restoring the LNG costs to the demand charge, pending final resolution of the Phase II proceedings. We express no view on the correct *ultimate* classification of the LNG costs; that is for the Commission to determine, in the first instance, when it renders its final decision on the Phase II issues. Until that time, however, the LNG costs must remain in the demand component of the rate.

### EFFECT OF THE SHIFT OF TRUNKLINE'S TAKE-OR-PAY COSTS TO ITS COMMODITY CHARGE

■ The third and final justification that *Seaboard* allows is "the possible need for a minimum bill to ensure that any costs arising from the pipeline's own minimum bill [equivalent to take-or-pay] obligations are collected from the customers responsible for a drop in demand." See *East Tennessee*, 863 F.2d at 940. Trunkline asserts that this factor is plainly present here, especially in light of the Commission's reassignment of its take-or-pay costs to the commodity charge.

Our precedents are overwhelmingly against Trunkline. In its minimum bill decisions for East Tennessee and Tennessee Gas, and in the present case as well, the Commission rejected the justification, even though in all three cases take-or-pay costs were in the commodity charge. It regarded the minimum bill as an inadequate mechanism for recouping take-or-pay expenses, as it failed to assign liability to the customers that actually caused the obligations to be incurred. In *East Tennessee*, 863 F.2d at 940–41, we accepted that explanation standing alone. In *Tennessee Gas Pipeline* we found this "narrow technical focus" on the imperfection of the minimum bill mechanism "disturbing," 871 F.2d at 1106, and added:

> The bigger picture strongly suggests that the specter of take-or-pay obligations does hinder pipelines from pursuing the competitive course chartered by FERC and requires them to devise some pricing strategy for recoupment when demand falls.

*Id.* The opinion nonetheless approved FERC's deletion of the minimum bill because of the existence of alternate remedies under Order No. 500, 42 Fed.Reg. 30,-334 (1987), *appeal pending sub. nom. American Gas Ass'n v. FERC*, No. 87–1588 (D.C.Cir. filed October 19, 1987). The court found that in light of the availability of those remedies—the adequacy of which Tennessee was able to challenge in the appeal of Order No. 500 now pending in this court—the Commission had reasonably found that the minimum bill was not "necessary to protect the [pipeline] and its customers from too painful a 'pinch' of unrestrained competition." *Tennessee Gas Pipeline*, 871 F.2d at 1107 (footnote and

citations omitted). The conclusion fits equally well here.

### EFFECT OF DECISION ON TRUNKLINE'S CREDITWORTHINESS

 Trunkline also makes a brief argument that elimination of its minimum bill undermines its creditworthiness and deprives its investors of reasonable financial safeguards, evidently in violation of both the statutory provision that its rates be "just and reasonable" and the constitutional prohibition of confiscatory rates. See *Jersey Central Power & Light Co. v. FERC*, 810 F.2d 1168, 1175 (D.C.Cir.1987) (*en banc*) (standards the same at least for some purposes); see also *FPC v. Hope Natural Gas Co.*, 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944). Trunkline points to record testimony that Trunkline has been unable "to issue debt securities at reasonable costs," J.A. at 172, and that it has not "restore[d] acceptable financial ratings," *id.* at 174. These circumstances would surely bolster a claim of unjust and unreasonable rates. We say "bolster" advisedly here. Phrases such as "reasonable costs" and "acceptable ... ratings" are highly elastic; much more concrete information would be required before we could hold these consequences to be unjust and unreasonable. There is, for example, no allegation as to current equity earnings, in sharp contrast to *Jersey Central*, where the company asserted that common stockholders were in effect being forced to pay interest on the company's bonds and dividends on its preferred stock. 810 F.2d at 1178. Moreover, we note that here only rate *design* is at issue—in substance, the ability of Trunkline to recover certain costs that customers are unwilling to pay by virtue of their access to cheaper spot market gas. In *Jersey Central*, by contrast, the Commission excluded from any part of the firm's rates the cost of an investment that was conceded to have been prudent when made. *Id.* at 1171. "[T]he hazard that the property will not earn a profit remains on the company in the case of a regulated, as well as an unregulated, business." *FPC v. Natural Gas Pipeline Co.*, 315 U.S. 575, 590, 62 S.Ct. 736, 745, 86 L.Ed. 1037 (1942). The evidence here falls far short of meeting the "heavy burden" imposed on a firm seeking to show that a rate order is "unjust and unreasonable in its consequences." *Hope Natural Gas*, 320 U.S. at 602, 64 S.Ct. at 288.

### *Conclusion*

We remand the case to the Commission (at its own request) to consider the possibility of retroactive imposition of its minimum bill deletion. We uphold the Commission's order eliminating Trunkline's minimum bill, but condition this decision on its restoring Trunkline's minimum bill payments to Trunkline LNG to the demand component of Trunkline's rate, pending final decision in the Phase II proceedings.

*So Ordered.*